UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**STEVE L. STROUD and STROUD CROP, INC.**,

    Plaintiffs,

    v.                                        **CIV NO. 02-343 DJS/RLP**

**FEDERAL CROP INSURANCE CORP.**,

    Defendant.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    **THIS MATTER** comes before this Court following a bench trial held April 10, 2003. The parties have consented, pursuant to 28 U.S.C. §636(c) and Fed.R.Civ.P. 73 to the undersigned to conduct any and all proceedings in this case, including the entry of a final judgment.

    The instant action is a civil action before this Court pursuant to jurisdiction under 28 U.S.C. §1331. Plaintiffs seek a declaratory judgment whether they owe Defendant the sum of $1,603,171.80.

    **FINDINGS OF FACT**

    1. In 1993, the Insurance Company of the Prairie States had a Standard Reinsurance Agreement with Defendant.

    2. Plaintiff Steve L. Stroud owned 46.25% and San Jacinto Underwriters, Inc., owned 53.10% of the Insurance Company of the Prairie States (ICOPS). Plaintiff Steve L. Stroud owned 100% of San Jacinto Underwriters, Inc.

1

3. In 1993, ICOPS suffered large losses on its policies that were covered by Defendant. By the end of 1993, ICOPS owed Defendant $3,662,801.27 for those losses. ICOPS was unable to pay the debt.

4. Plaintiff Steve L. Stroud sought a release of the ICOPS debt to Defendant, for which he was not personally liable, in order to sell ICOPS.

5. In order to release the ICOPS debt to Defendant, Plaintiffs and Defendant entered into an Agreement (Assumption Agreement) dated September 14, 1994 and Plaintiff Steve L. Stroud executed an Assignment of Interest, also dated September 14, 1994. In light of the two foregoing documents, Defendant executed an Agreement (Release Agreement) dated September 14, 1994.

6. Plaintiff Steve L. Stroud signed each of the documents described in ¶5, *supra*, in both his individual capacities and as president of Stroud Crop, Inc.. The Assignment of Interest conveyed interests in income due to Plaintiff Steve L. Stroud, Stroud Crop, Inc., and San Jacinto Underwriters, Inc.. The second paragraph of the Release Agreement states "In consideration of the release of all debts and liabilities of the Insurance Company of the Prairie States by the Federal Crop Insurance Corporation, the undersigned, Steve L. Stroud, individually and on behalf of Stroud Crop, Inc., agrees to assume all debts and liabilities of the Insurance Company of the Prairie States owed to the Federal Crop Insurance Corporation."

7. The anticipated sale of ICOPS contemplated in the September 14, 1994 Agreement was not consummated . ICOPS was sold in 1996 to the American Feed Industry Insurance Company Risk Retention Group. That sale did not result in any payment of funds to Defendant.

8. In order to facilitate the 1996 sale of ICOPS, the parties entered into an Amendment to the Agreement dated January 8, 1996 and an Amendment to the Assignment of Interest dated January

2

8, 1996.

9. The second paragraph of the January 8, 1996 Amendment to the Agreement states in part that "In consideration for the release of all debts and liabilities of the Insurance Company of the Prairie States, the undersigned, Steve L. Stroud, Individually and on behalf of Stroud Crop, Inc., and San Jacinto Underwriters, agrees that it will waive its right under paragraph 5 of the assignment of interest to retain a maximum of $500,000 per annum from commissions or other income earned for operating expenses.".

10. Under the various agreements, Plaintiffs have paid to Defendant all $2,059,629.95 of the debt owed by ICOPS. The sum of $1,603,171.80 remains outstanding. In an effort to facilitate payment of the full debt, Defendant has never sought interest on the sums owed.

11. On May 29, 1998, Plaintiff Steve L. Stroud wrote a letter to E. Heyward Baker, Director of the Federal Crop Insurance Corporation, stating in part that "...I should be able to settle my debt to FCIC." and further indicating that he might be making an interim payment on the debt the following month.

12. On May 8, 2001, Plaintiff Steve L. Stroud entered into a marital settlement agreement which listed amongst payments due from the marriage "Payment to the debt to FCIC in an amount to be negotiated by Steve Stroud, (the FCIC debt accrued prior to the divorce and the balance on the date of divorce is approximately 1.5 million dollars)".

**CONCLUSIONS OF LAW**

12. In the Pre-Trial Order, the parties stipulate that Federal law and New Mexico law control this action. Pre-Trial Order filed March 31, 2003 (Docket No. 19) ¶3(c).  The question of exactly

how New Mexico and Federal law applies to this case is more complicated and is not addressed by the parties.

> "Because of the strong federal interest implicated when the United States disburses funds from the public fisc, it is well established that federal law ultimately controls the government's rights and responsibilities when acting in this arena. See United States v. Kimbell Foods, Inc., 440 U.S. 715, 726-27 (1979); Clearfield Trust Co. v. United States, 318 U.S. 363, 366-67 (1943). The rule of decision governing a particular issue or set of issues, however, need not be a uniform federal one. Rather, the federal courts may adopt the otherwise-applicable state law as the rule of decision under federal common law in an appropriate case. See Kimbell Foods, 440 U.S. at 727-29." United States v. Currituck Grain, Inc., 6 F.3d 200, 202 (4th Cir. 1993).

The Supreme Court indicated that where federal common law is to be fashioned, it should usually incorporate the applicable state law. The Court analyzed three factors in determining whether federal common law should incorporate or depart from the relevant state law: 1) whether there is a need for a nationally uniform body of law;  2) whether the application of state law would frustrate specific objectives of a federal program;  and 3) the extent to which application of a federal rule would disrupt commercial relationships predicated on state law. Kimbell Foods, 440 U.S. at 728- 29. In light of the considerations set forth in Kimbell Foods, *supra*, and the parties' silence on the subject, this Court finds that it is appropriate to apply New Mexico law to the interpretation of the agreements which are at issue in this case. The application of New Mexico law will not frustrate the objectives of the Federal Crop Insurance program, nor has the Court identified any need for a nationally uniform body of law to apply to situations analogous to the one before this Court. Cf. Fryman v. Federal Crop Insurance Corp., 936 F.2d 242, 249 (6th Cir. 1991) (applying, without discussion, Kentucky law to contract dispute between farmers and the Federal Crop Insurance Corp.); AWG Farms, Inc. v. Federal Crop Ins. Corp., 757 F.2d 720, 726 (8th Cir. 1985) (same, applying Minnesota law).

    13. Under New Mexico law, the question of whether an agreement contains an ambiguity is

a matter of law to be decided by the trial court. <u>Mark V, Inc. v. Mellekas</u>, 845 P.2d 1232, 1235 (NM 1993) (citation omitted). The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. <u>Id.</u> If the evidence is presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law. <u>Id.</u>

14. In light of the evidence presented to this Court of the circumstances surrounding the execution of the September 14, 1994 agreements, this Court concludes that there is no ambiguity as a matter of law. Plaintiff, Steve L. Stroud, undertook personal liability for the amounts owed by the Insurance Company of the Prairie States to the Federal Crop Insurance Corporation in order to enable the sale of the latter entity.

15. To the extent that the January 8, 1996 amendment to the agreement is ambiguous as to whether the parties intended for Plaintiff's relinquishment of his right to up to $500,000 per annum of operating expenses to serve as satisfaction of the entire amount outstanding, the Court finds that the parties did not intend such a result. The conduct of the parties, in particular Plaintiff Steve L. Stroud's repeated characterization to Defendant and others of the unpaid amounts as a debt he intended to pay, establishes that Plaintiffs' individual liability for the balance of the debt to Defendant remained unchanged.

16. Given the history of payments by Plaintiffs to Defendant and the ongoing collection process, Defendant is not barred from collecting the remainder of the debt by the statute of limitations.

17. The agreement by Plaintiffs to assume the debt of the Insurance Company of the Prairie States is not void as a matter of law, as consideration for assumption of the debt was obtained by

Plaintiffs in the form of the removal of a significant impediment to the sale of the Insurance Company of the Prairie States, which sale was accomplished in 1996.

18. Plaintiffs owe to Defendant the sum $1,603,171.80, which constitutes a valid debt.

**IT IS SO ORDERED.**

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**